## 5458. MIZELL LIVE-STOCK COMPANY *v.* SMITH.

1. The purchaser of a mule under a contract embraced in a purchase-money note, in which it was stipulated that title to the mule should remain in the vendors until payment of the note, failed to pay the note, and an agent of the vendors took possession of the mule, with his consent, and went to his father, at his request, and sold the mule to the father on credit, the father then signing the original purchase-money note that the son had given. The father subsequently paid the note, and the vendors transferred it to him "without recourse." Possession of the mule, when the father bought it, was given by him to the son, who thereafter kept it and used it in making crops on land occupied by the son as tenant of the father. The son, while thus in possession of the mule, executed a mortgage on it to a third person, without the father's knowledge or consent, and without authority from the father for the son to hold it out to any one as his own property. This mortgage was foreclosed, and the execution was levied on the mule. A claim to the property was interposed by the father, and, on the trial of the claim case, the foregoing facts appeared from uncontradicted evidence. *Held,* that the court did not err in directing a verdict in favor of the claimant.

2. The court did not err in refusing to allow a witness to testify that in the creation of the debt for which the mortgage was given, credit was extended to the mortgagor on the faith of his being in possession of the mule in question, claiming it as his own.

DECIDED MAY 16, 1914.

Levy and claim; from city court of Douglas—Judge Lankford. December 9, 1913.

*L. E. Heath, J. J. Rogers,* for plaintiff.

*O'Steen & Wallace,* contra.

ROAN, J. William M. Smith contracted for the purchase of a mule from Patterson Brothers & Lewis, and at the time of the purchase delivered to them his note for the purchase-price, in which title to the mule was retained in the vendors until payment of the debt. Smith failed to pay the note when due, and, by his consent, the vendors, through their agent, took possession of the mule. Smith told the agent at the time, however, that if he would go with him to see his father, I. D. Smith, his father would pay for the mule. They went together and saw I. D. Smith, and the agent, acting for the vendors, contracted to sell the mule to I. D. Smith, telling him that if he purchased it he would get a good title, and agreeing to extend credit to him for the purchase-price. The agent did not have a blank note with him, so he told I. D. Smith that he could sign his name on the note given by William M. Smith for the purchase-price of the mule. I. D. Smith signed the note, below

38

the name of William M. Smith, and took charge of the mule and turned it back to his son, who was his tenant, working on his place, and the son, under that arrangement, kept and worked the mule until it was levied on under an execution against the son in favor of the Mizell Live-Stock Company. A claim was interposed by I. D. Smith, and on the trial of the claim case, the court, at the conclusion of the evidence, directed a verdict for the claimant. The plaintiff in execution excepted.

Undisputed evidence in the record shows that I. D. Smith, the claimant, paid the entire purchase-price for the mule, and that when he finished paying it, which was prior to the creation of the debt of William M. Smith to the Mizell Live-Stock Company, the note given for the purchase-price of the mule was transferred to I. D. Smith by the vendors, without recourse. While William M. Smith had the custody of the mule after this transaction between the vendors and his father, it was as the tenant of his father. Subsequently to this transaction with the father, and at a time, as the evidence discloses, when the son had no interest in the mule, the son contracted with the Mizell Live-Stock Company for the purchase of a horse, and, as security for the payment of the purchase-price, gave them a mortgage upon the mule. He did this without the knowledge or consent of his father. This mortgage was foreclosed, and the present case arose upon the levy of the execution issued on the foreclosure of the mortgage. The father testified: "I know the mule in controversy. It is my mule. I paid for it. The defendant, William Smith, is my son, and is my tenant on a place of mine, living some distance from where I live. I remember that I fully paid for this mule prior to the time the execution in favor of the plaintiff in this case was issued, and prior to the time that William Smith gave the mortgage on this mule to the company. I never sold it to William Smith, or bargained to sell it to him, nor did I ever authorize him to mortgage it or to hold it out to anyone as his property." This evidence is practically undisputed; and if it fails to establish title upon which the claimant can protect the mule from sale for his tenant's debt, then all landlords who furnish stock to their tenants to work are at the mercy of any tenant who sees fit to give a lien upon the property he is working. It is impossible for the tenant to mortgage the property or otherwise encumber it, except by an act in the doing of

which he asserts the property is his. Unless the evidence somewhere discloses that the owner of the mule consented to such a representation or acquiesced in it, or fraudulently confederated with the party making it, he should not be held bound thereby. So far as the record discloses, this claimant did nothing that gave his son's creditors the right to subject his mule for the son's debts, and did not leave anything undone that honesty or common prudence would have dictated.

The claimant's title to this mule does not rest upon the manner in which the note originally given for the purchase of the mule was transferred to him, but upon the fact that he purchased the mule from one who owned it, and paid for it in full. This he did under a contract that it was to be his; and his title was perfect in law and good in equity independently of any note given for its purchase. If title to the mule was retained in the original vendors, no lien without their consent could legally be imposed upon it by William M. Smith while they held the title. When the father finished paying for the mule, this vested him with the title eo instanti, without any transfer of the note. If William M. Smith made false representations to the Mizell Live-Stock Company concerning the title to this mule, and obtained from it credit upon the faith of those representations, and thereby defrauded the company, he may have thereby incriminated himself; but if this be true it should not affect his father, the real owner of the property, unless the father acquiesced in the representations or in some way authorized them to be made.

Exception was taken to the court's ruling in not permitting W. T. Parks, a witness, to answer that when William M. Smith purchased the horse named Bob, for the consideration of $250, from the Mizell Live-Stock Company, and executed a mortgage on the mule here claimed, for the better securing of the debt, credit was extended to him on the faith of his being in possession of the mule in controversy, claiming it as his own. Such testimony would not be of any probative value as against the claimant, it not appearing that the claimant acquiesced in his son's claim or the giving of the mortgage, or otherwise was acting so as to be bound by it.

The evidence in this case was practically undisputed, and created no issue for the jury to try. Hence the court committed no error in directing the verdict.                    *Judgment affirmed.*